**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

AGS Underground,

                Plaintiff,

        v.

ASE Properties LLC

                Defendant.

Case No. 5:21-cv-00449-VAP-SPx

**Order GRANTING Motion to Dismiss IN PART (Dkt. 57)**

Before the Court is a Motion to Dismiss ("Motion," Dkt. 57) filed by Defendant Jeffery T. Peetz, in his capacity as Personal Representative of the Estate of Joseph Augustine, deceased ("Defendant").

After considering all the papers filed in support of, and in opposition to, the Motion, the Court deems this matter appropriate for resolution without a hearing pursuant to Local Rule 7-15.  The Court **GRANTS** the Motion **IN PART.**

## I.  BACKGROUND

On December 1, 2020, Plaintiff AGS Underground ("Plaintiff" or "AGS") initiated this action by filing a Complaint in California Superior Court against Defendants Sandra E. Augustine, successor trustee of the Joseph Augustine Trust dated September 16, 2004, as amended; Sandra E. Augustine, trustee of the amended and restated Joseph W. Augustine and

United States District Court
Central District of California

Sandra E. Augustine Trust; Sandra E. Augustine, trustee of the Joseph W. Augustine Irrevocable Trust; Sandra E. Augustine, trustee of the Sandra E. Augustine (Survivor's) Trust; ASE Properties, LLC, doing business as Sabal Properties, LLC; and Defendant Peetz, (collectively, "Defendants."). (Dkt. 1). On March 12, 2021, Defendants removed the action to this Court on the basis of diversity jurisdiction. 28 U.S.C. § 1332. Plaintiffs filed a First Amended Complaint on May 4, 2022 (Dkt. 37) and a Second Amended Complaint ("SAC," Dkt. 52) on May 31, 2022. The SAC asserts thirteen claims against Defendants, including claims for fraudulent misrepresentation and concealment, breach of contract, cancellation of instruments, action on judgment, quiet title, and declaratory relief.

The Court's September 13, 2021 Order Denying Motion to Stay detailed the facts of this case. (Dkt. 31). The Court restates the facts here as alleged in the SAC.

Joseph Meade ("Meade") was the sole shareholder, sole director, chief executive officer, secretary, and chief financial officer of Plaintiff company AGS Underground. (SAC, ¶ 16). AGS was a construction subcontractor for Road Builders, Inc. ("RBI"), a company owned by Joseph Augustine. *Id.* at ¶ 17. Meade and Joseph Augustine enjoyed a personal friendship and close business relationship for around 20 years. *Id.* Joseph Augustine was also the sole shareholder, sole director and president of Coronado Properties, Inc. ("Coronado Properties"). *Id.* at ¶23.

Since July 13, 2007, Coronado Properties owned real property at 38472 Sky Canon Drive, Murrieta, County of Riverside, California (the "Murrieta Property"). *Id*. In 2011, Coronado Properties defaulted on a loan from Bank of America that was secured by a Deed of Trust on the Murrieta Property. *Id.* at ¶ 24. Consequently, Joseph Augustine and Meade entered into an agreement whereby Meade would prevent foreclosure on the property by purchasing the Murrieta Property for cash through a short sale with Bank of America, lease it back to RBI, and hold it until Joseph Augustine asked to repurchase it. *Id.* On or about September 28, 2011, AGS purchased the Murrieta Property from Coronado Properties in a short sale by paying $802,350 to Bank of America. *Id.* at ¶ 25. AGS received title to the Murrieta Property via grant deed from Coronado Properties ("2011 Grant Deed"). *Id.* Between September 2011 and April 4, 2014, AGS incurred additional costs of $31,157.56 with respect to the Murrieta Property for payment of property taxes, closing costs, accounting fees, and miscellaneous costs. *Id.* at ¶ 26.

In March 2014, Joseph Augustine asked Meade to allow Augustine's 2004 Trust to purchase the Murrieta Property from AGS. *Id.* at ¶ 27. Augustine further asked Meade if he would allow AGS to finance 100 percent of the purchase price by permitting the 2004 Trust to provide a secured promissory note to AGS in the full amount of the agreed purchase price: $833,507.56 (the "Note"). *Id.* Plaintiff alleges that Joseph Augustine promised Meade that the 2004 Trust would provide to AGS a Deed of Trust on the Murrieta Property in consideration for 100%, no money down

financing, to secure payment of the Note in the amount of the Purchase Price. *Id.* Meade accepted the terms of the offer. *Id.* at ¶ 28.

The 2004 Trust prepared the Purchase Agreement, Note, and Deed of Trust in connection with its purchase of the Murrieta Property from AGS and these documents were executed in April 2014. *Id.* at ¶¶ 28- 31. In these documents, the 2004 Trust agreed to pay AGS $8,840.64 monthly from May 1, 2014 through April 1, 2024. *Id.* at ¶ 31. The 2004 Trust, however, did not deliver a grant deed to the Murrieta Property for AGS's signature until eleven months later, on March 2015. *Id.* at ¶ 33. Thus, although the 2004 Trust executed the Trust Deed as the trustor, it "did not hold legal title to the Murrieta Property" when the Deed of Trust was recorded on April 16, 2014, because title was still held by AGS on that date. *Id.* In effect, the Deed of Trust did not secure the Note "as Joseph Augustine had promised [to Meade] would be the case, and as the Note required." *Id.* at ¶ 34.

In March 2015, Joseph Augustine told Meade he needed the Deed of Trust to the Murrieta Property reconveyed to the 2004 Trust "for a short period of time 'in order to have his estate planning documents revised' and told Meade as the representative of AGS that when 'revisions' to his estate planning documents were complete, the 2004 Trust would issue a Deed of Trust for the benefit of AGS to secure the Note, just as the 2014 Purchase Agreement provided." *Id.* at ¶ 35. Joseph Augustine "promised that if AGS executed and delivered the reconveyance and grant deed in March 2015, that the 2004 Trust would cause to be recorded a Deed of Trust to secure the Note immediately after [his] estate planning documents had been

revised." *Id.* at ¶ 51.  The 2004 Trust's counsel then sent Meade a substitution of trustee form, full reconveyance form, and grant deed ("2015 Grant Deed") for the Murrieta Property; Meade executed the documents on AGS's behalf without first consulting a lawyer and without fully understanding the import of these documents.  *Id.* at ¶ 35.  Meade relied on Joseph Augustine's explanation and promise because Joseph Augustine was his "good friend."  *Id.*  The 2004 Trust caused these documents to be recorded on April 21, 2015 ("the Reconveyance)."  *Id.* at ¶ 36.

In June 2017, Joseph Augustine and his wife Sandra Augustine created an Amended Trust, "for their benefit and the benefit of their children from previous marriages."  *Id.* at ¶ 44.  They transferred ownership of various properties to the Amended Trust, including the Murrieta Property on October 24, 2017 ("2017 Grant Deed'"), which was listed on Schedule B of the Amended Trust as Sandra Augustine's separate property.  *Id.* at ¶¶ 44, 46.

The 2004 Trust continued to make the monthly payments specified in the 2014 Note and Purchase Agreement to AGS until January 2019 but stopped making payments in February 2019.  *Id.* at ¶ 59.  Joseph Augustine died on March 26, 2019.  *Id.* at ¶ 60.  On May 22, 2019, Sandra Augustine recorded several documents reflecting her husband's death, including a change of trustee and a grant deed ("2019 Grant Deed"), transferring ownership of the Murrieta Property from the Amended Trust to her Irrevocable Trust and Survivor's Trust.  *Id.* at ¶¶ 47-48.

United States District Court
Central District of California

1    In the summer of 2019, when Meade asked Sandra Augustine about

2  the delinquent payments for the Murrieta Property, she claimed to know

3  nothing about it.  *Id.* at ¶ 50.  Meade had copies of the Note and Deed of

4  Trust sent to her on August 19, 2019, and then she asked Meade to contact

5  Peetz, who represented Joseph Augustine's estate.  *Id.*  Meade called Peetz

6  in September 2019.  *Id.* at ¶ 51.   Peetz was aware of the Note but claimed

7  AGS did not have an interest in the Murrieta Property because of the 2015

8  Reconveyance; Peetz claimed the Note was not secured because the Deed

9  of Trust was no longer in effect in light of the Reconveyance.  *Id.*  "That was

10  the first time that Joe Meade, and thus AGS, became aware that the 2004

11  Trust did not record a Deed of Trust to secure the Note after Joseph

12  Augustine's estate planning documents had been 'revised' as Joseph

13  Augustine had represented to Meade and AGS in March 2015."   *Id.*

14

15    On September 11, 2019, Sandra Augustine recorded a grant deed

16  (September 2019 Grant Deed"), transferring ownership of the Murrieta

17  Property from her Survivor's Trust to "ASE Properties, LLC, a Nebraska

18  Limited Liability Company doing business as Sabal Properties, a California

19  Limited Liability Company."  *Id.* at ¶ 52.  Sandra Augustine "is the sole

20  member and sole manager of Sabal Properties."  *Id.* at ¶ 53.   Sandra

21  Augustine recorded an "Affidavit – Death of Trustee" on August 28, 2020 to

22  establish "her succession as sole trustee pursuant to the Trust and to

23  enable her to administer and distribute the trust estate pursuant to the terms

24  of the Trust."  *Id.* at ¶ 54.  Sandra Augustine also recorded on August 28,

25  2020 a grant deed ("2020 Grant Deed"), transferring ownership of the

26  Murrieta Property to herself, as trustee of the Irrevocable Trust and

United States District Court
Central District of California

Survivor's Trust, "even though Sabal Properties owned the Property at that time." *Id.* at ¶ 55.  Despite demands for payment under the 2004 Purchase Agreement and Note, the 2004 Trust and its successors "have failed and refused to pay any amounts owing under the Note since January 29, 2019" which as of November 30, 2020 was over $601,497.40 plus $78.28 in daily interest thereafter.  *Id.* at ¶ 56.

On January 14, 2022, the County Court of Lancaster County, Nebraska entered a judgment ("Judgment") in the matter entitled *In the Matter of the Estate of Joseph Augustine, Deceased*, Case No. PR-20-206. *Id.* at ¶ 171; Exhibit 16.  The Judgment was entered in favor of AGS against the Estate of Joseph Augustine with respect to a May 20, 2020 Statement of Claim filed by AGS.  *Id.* at ¶ 172.  The Nebraska Court found that the Note executed by Joseph Augustine on April 1, 2014, was a valid debt of the Estate and the "principal amount due as of October 28, 2021 is $601,497.40, with per diem interest of $78.28."  *Id.* at ¶¶173,176; Exhibit 16, at p. 2.

To date, AGS has been unable to recover on the Judgment from the Estate.  AGS alleges that the Estate of Joseph Augustine is insolvent as a result of the creation of the Amended Trust, which transferred all of the 2004 Trust's assets to Sandra Augustine, and the failure and breach of duty by Peetz as Personal Representative of the Estate of Joseph Augustine to set aside the 2004 Trust's assets to Sandra Augustine.  *Id.* at ¶ 184.  In light of the Judgment, AGS added a claim in the SAC for "Action on Judgment,"

seeking enforcement of the Judgment by this Court and execution of the
Judgment against real property located in this district.

As relevant here, the SAC asserts four claims against Defendant
Peetz for Quiet Title, Cancellation of Instruments, Action on Judgment, and
Declaratory Relief.  *See* SAC, ¶¶ 60-61.  On July 7, 2022, Defendant Peetz
filed the instant Motion to Dismiss all claims against him.  (Dkt. 57).  On July
25, 2022, Plaintiff filed an Opposition, ("Opp'n," Dkt. 60) to which Defendant
filed a Reply on August 1, 2022 (Dkt. 61).

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to bring a mo-
tion to dismiss for failure to state a claim upon which relief can be granted.
Rule 12(b)(6) is read along with Rule 8(a), which requires a short, plain
statement upon which a pleading shows entitlement to relief.  Fed. R. Civ.
P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (holding that the Fed-
eral Rules require a plaintiff to provide "'a short and plain statement of the
claim' that will give the defendant fair notice of what the plaintiff's claim is
and the grounds upon which it rests" (quoting Fed. R. Civ. P. 8(a)(2)).); *Bell
Atl. Corp. v Twombly*, 550 U.S. 544, 555 (2007).  When evaluating a Rule
12(b)(6) motion, a court must accept all material allegations in the com-
plaint—as well as any reasonable inferences to be drawn from them— as
true and construe them in the light most favorable to the non-moving party.
*See Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005); *ARC Ecol-
ogy v. U.S. Dep't of Air Force*, 411 F.3d 1092, 1096 (9th Cir. 2005); *Moyo v.
Gomez*, 32 F.3d 1382, 1384 (9th Cir. 1994).  "The court need not accept as

United States District Court
Central District of California

true, however, allegations that contradict facts that may be judicially noticed by the court." *Schwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and con- clusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted).  Rather, the allega- tions in the complaint "must be enough to raise a right to relief above the speculative level." *Id.*  To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defend- ant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

The Ninth Circuit has clarified that: (1) a complaint must "contain suffi- cient allegations of underlying facts to give fair notice and to enable the op- posing party to defend itself effectively" and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  Although the scope of review is limited to the contents of the

complaint, the Court may also consider exhibits submitted with the complaint, *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990), and "take judicial notice of matters of public record outside the pleadings," *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988).

### III.    DISCUSSION

Plaintiff brings four claims against Defendant Peetz for Quiet Title, Cancellation of Instruments, Action on Judgment, and Declaratory Relief. *See* SAC, ¶¶ 60-61.  Defendant seeks to dismiss all four claims on the grounds that Plaintiff fails to state plausible claims for relief.  The Court will examine each of the claims in turn.

### A.  Quiet Title

An action to quiet title is used "to establish title against adverse claims to real or personal property or any interest therein."  *Santana v. BSI Fin. Servs., Inc.*, 495 F. Supp. 3d 926, 949 (S.D. Cal. 2020) (citing Cal. Civ. Proc. Code § 760.020).  The term "claim" is defined broadly and includes any "legal or equitable right, title, estate, lien, or interest in property or cloud upon title."  *Id.*  (citing Cal. Civ. Proc. Code § 760.010(a)).  "To state a claim for quiet title, the complaint must . . .  include (1) a legal description of the property and its street address or common designation; (2) the title of the plaintiff and the basis of the title; (3) the adverse claims to the title of the plaintiff; (4) the date as of which the determination is sought; and (5) a prayer for the determination of the title of the plaintiff against the adverse claims."  *CitiMortgage, Inc. v. Wright*, No. CV-16-2920-DSF (FFMx), 2018 WL 6016949, at *4 (C.D. Cal. Apr. 6, 2018) (citing Cal. Civ. Proc. Code §

761.020).  "If a person required to be named as a defendant is dead and the plaintiff knows of a personal representative, the plaintiff shall join the personal representative as a defendant."  *Id.* at § 762.030(a).

Here, Plaintiff seeks a judgment against all Defendants quieting title in AGS's superior and first priority interest in the Murrieta Property.  (SAC, ¶ 32).  Plaintiff also seeks an order and judgment cancelling any recorded interest that is inconsistent with AGS's interest in the Murrieta Property, including the 2015 Grant Deed, 2017 Grant Deed, 2019 Grant Deed, September 2019 Grant Deed, and the 2020 Grant Deed and Reconveyance.  *Id.* at ¶ 33.  In the alternative, AGS seeks a determination that it has a lien, security interest, and/or Deed of Trust on the Murrieta Property securing the full amount of the Judgment, plus accrued interest and attorneys' fees.  *Id.* at ¶198.  Plaintiff's quiet title claim is based on the allegations in the SAC that Defendants made various fraudulent transfers of the title to the Murrieta Property.

Defendant Peetz, as personal representative of the Estate, argues that he is not a proper party to the quiet title claim because the Estate does not have an adverse claim to the Murrieta Property.  According to Defendant, the Murrieta Property was never under the control of the Estate because of the Reconveyance that was recorded in 2015, and "the Estate is not a party to, nor does it have control of the instruments that Plaintiff seeks to have cancelled . . . ."  (Motion, at 7).[1]  Defendant points out that the

---

[1] Although Plaintiff obtained a Judgment against the Estate for the value of the Note, the Note was not secured by the Property.

United States District Court
Central District of California

1  Murrieta Property became the separate property of Sandra Augustine by

2  way of the Amended Trust in 2017, prior to Joseph Augustine's death in

3  March 2019 and prior to Peetz becoming Personal Representative of the

4  Estate.  *Id.* at 7-8.  Accordingly, Defendant asserts that the Estate is unable

5  to provide the relief sought in the quiet title claim.

6

7          The Court is persuaded by Defendant's argument that the Estate

8  does not have an adverse claim to the Murrieta Property.  The SAC itself

9  alleges that the Estate never controlled the Murrieta Property and has no

10  claim to it.  As set forth in the SAC, the 2004 Trust transferred the Murrieta

11  Property to the Amended Trust by grant deed recorded on October 24,

12  2017, where it became Sandra Augustine's separate property.  *See* SAC, ¶¶

13  44-46.  The Amended Trust owned the Murrieta Property outright until

14  Joseph Augustine's death on March 26, 2019.  *Id.* at ¶ 47.  By grant deed

15  recorded on May 22, 2019, Sandra Augustine, as Trustee of the Irrevocable

16  Trust and Survivor's Trust, transferred the Murrieta Property to the

17  Survivor's Trust.  *Id.* at ¶ 48.  The Murrieta Property remained in the

18  Survivor's Trust until it was transferred to Sabal Properties, LLC, a

19  Nebraska Limited Liability Company owned and managed by Sandra

20  Augustine, by grant deed recorded on September 11, 2019.  *Id.* at ¶ 52.

21  Subsequently, by grant deed recorded on August 28, 2020, Sandra

22  Augustine purported to transfer the Murrieta Property back to herself as

23  Trustee of Irrevocable Trust and Survivor's Trust, even though Sabal

24  Properties owned the Property at that time.  *Id.* at ¶ 55.  This timeline makes

25  clear that at no point in time was the Murrieta Property under the control of

26

the Estate, nor was it ever under Peetz's control as Personal

Representative.


In Opposition, Plaintiff argues that maintaining Peetz as a Defendant

would "finally lay to rest all questions about title in the Murrieta Property

against all the world, including Peetz as Personal Representative of the

Estate, and Joseph's heirs." (Opp'n, at 22). Plaintiff suggests that Peetz

"might be necessary to an adjudication of the issues involved," and cites to

cases where courts have allowed quiet title claims to proceed against the

executors of estates of a decedent, his heirs, or both. *See id.* Plaintiff,

however, fails to articulate a theory of liability under which Peetz or the

Estate could plausibly claim title to the Murrieta Property. In each case cited

by Plaintiff, a personal representative to an estate was named because the

property in question was part of the estate of the decedent. *See Schroeder

v. Wilson*, 89 Cal.App.2d 63 (1948); *Hollyfield v. Geibel*, 20 Cal.App.2d 142

(1937). Here, however, it is undisputed that the Murrieta Property was

never part of the Estate because it was transferred to the Amended Trust

before the Estate existed. Plaintiff does not cite any cases in which a

personal representative of an estate was named in a quiet title action when

the estate had no claim to the property in question.


Indeed, other courts have dismissed parties to quiet title claims after

determining that those parties lacked an adverse claim to title. *Santana v.

BSI Financial Services, Inc.,* for example, concerned a quiet title claim on a

foreclosed property. 495 F. Supp. 3d at 949. The plaintiff in *Santana*

brought claims against Defendant BSI--the loan servicer of the foreclosed

United States District Court
Central District of California

property-- and Defendant U.S. Bank, the third-party purchaser of the foreclosed property.  The court dismissed the quiet title claim against BSI, ruling that "once the property ha[d] been sold in a foreclosure sale," BSI's claim to title was "extinguished" and it no longer had an adverse claim.  *Id.*  Only the purchaser and current titleholder, U.S. Bank, maintained an adverse claim to the property.  *Id.; see, e.g., Aldana v. Bank of America, N.A.*, Case No. CV 14-1646-GHK (FFMx), 2014 WL 12577145, at *4 (N.D. Cal. May 2, 2014) (dismissing a quiet title claim against Defendants because none of them had an adverse claim to the title, as the Property was sold to a third-party purchaser).  As *Santana* makes clear, and contrary to Plaintiff's arguments, the "broad statutory definition of an adverse 'claim'" does not reach parties who have no plausible claim to the title.  (Opp'n, at 23).

Here, Plaintiff simply fails to articulate any adverse claim that Peetz or the Estate would have with respect to the Murrieta Property.  In effect, Plaintiff is alleging that the Property *would have* been part of the Estate if not for the fraudulent acts of Joseph and Sandra Augustine.  Nonetheless, Sandra Augustine is the proper party to the quiet title claim, as she currently has title to the Property.  Plaintiff has failed to state a plausible quiet title claim against Defendant Peetz.

The Court therefore **DISMISSES** the Quiet Title claim against Defendant Peetz **WITH LEAVE TO AMEND.**

**B.    Cancellation of Instruments**

United States District Court
Central District of California

1    "Cancellation of an instrument is essentially a request for rescission of

2    the instrument." *Deutsche Bank Nat'l Tr. Co. v. Pyle*, 13 Cal. App. 5th 513,

3    523 (2017) (citing *Bank of America v. Greenbach*, 98 Cal.App.2d 220, 228,

4    (1950)).  California Civil Code Section 3412 provides that a written

5    instrument may be "delivered up or cancelled" when "there is a reasonable

6    apprehension that if left outstanding it may cause serious injury to a person

7    against whom it is void or voidable."  Cal. Civ. Code § 3412 (West).  "To

8    prevail on a claim to cancel an instrument, a plaintiff must prove (1) the

9    instrument is void or voidable due to, for example, fraud, and (2) there is a

10   reasonable apprehension of serious injury including pecuniary loss or the

11   prejudicial alternation of one's position." *Weeden v. Hoffman*, 70 Cal. App.

12   5th 269, 294 (2021) (citing *Thompson v. Ioane*, 11 Cal.App.5th 1180, 1193–

13   1194 (2017)).

14

15   Plaintiff seeks a judgment cancelling and voiding the 2015 Grant

16   Deed, 2017 Grant Deed, 2019 Grant Deed, September 2019 Grant Deed,

17   2020 Grant Deed, and the Reconveyance.  (SAC, ¶¶ 21-23).  Plaintiff

18   argues that all of these instruments were procured through Defendants'

19   fraud.  *Id.* at ¶¶ 45-49.  Plaintiff also seeks general and punitive damages

20   against Defendants.  *Id.* at ¶¶ 23-24.

21

22   Plaintiff's cancellation of instruments claim against Defendant Peetz

23   fails for the same reasons that doom his quiet title claim.  Although a claim

24   to cancel an instrument is "distinct" from a claim to quiet title, where a

25   complaint brings both causes of action based on the same facts, courts

26   construe the claims as one. *Deutsche Bank Nat'l Tr. Co.*, 13 Cal. App. 5th at

United States District Court
Central District of California

523.  The "cancellation claim is incidental to the claim to quiet title," meaning that "Plaintiff must show a right to rescind before he can be granted the right to quiet his title."  *Id.* at 523-524 (citing (*Leeper v. Beltrami,* 53 Cal.2d 195, 216 (1959)).  Here, Plaintiff cannot show that the Estate was a party to any of the written instruments in question, including the 2015 Grant Deed, 2017 Grant Deed, 2019 Grant Deed, September 2019 Grant Deed, 2020 Grant Deed, and the Reconveyance.  The SAC concedes that the Estate was not a party to any deed for the Murrieta Property.

The Court therefore **DISMISSES** the Cancellation of Instruments claim against Defendant Peetz **WITH LEAVE TO AMEND.**

### C.  Action on Judgment

Plaintiff also brings a claim for Action on Judgment against all Defendants.  As discussed *supra,* on January 14, 2022, the Nebraska Court entered Judgment in favor of AGS against the Estate of Joseph Augustine for the value of the breached Note, in the amount of $601,497.40, with per diem interest of $78.28.  (Exhibit 16, Dkt. 37-1, at 3).  In awarding Judgment, the Nebraska Court explained that it was not deciding which assets were or were not available to satisfy the claim.  *Id.*  Plaintiff's Action on Judgment claim seeks enforcement and execution of the Judgment by this Court.  Plaintiff requests the Court 1) amend the Judgment to add Defendants Sandra Augustine and Sabal Properties as judgment debtors 2) order enforcement and execution of the Judgment against the Murrieta Property, which is located in this District 3) enter Judgment against Defendants in the amount of $601,497.40, with per diem interest of $78.28

16

United States District Court
Central District of California

for each day after January 14, 2022; and 4) award attorneys' fees and costs to AGS as provided in Paragraph 6 of the Note.  (SAC, ¶¶ 25-28).

Defendant Peetz moves to dismiss the claim primarily on procedural grounds.  Defendant argues that Plaintiff's claim is untimely because it waited too long under Nebraska law to compel Peetz, as Personal Representative of the Estate, to recover the Murrieta Property.[2]  (Motion, at 8; *see* Neb. Rev. Stat. Ann. § 30-2726 (West)).  According to Peetz, Plaintiff had one year after Joseph Augustine's death to demand that Peetz recover the Murrieta Property on behalf of the Estate, and Plaintiff failed to make a demand in that time.  *Id.* at 9.  Defendant also accuses Plaintiff of forum-shopping and "seeking to bypass controlling Nebraska law" by "impermissibly seeking to enforce a Nebraska judgment in California." (Motion, at 57).

As a preliminary matter, Plaintiff is entitled to seek enforcement of the Judgment in this Court.  Defendant Peetz identifies no legal reason why it would be "impermissible" for this Court to enforce the Nebraska Judgment. (Motion, at 57).  "The judgment of a state court is entitled to full faith and credit under Article IV, Section 1 of the United States Constitution and by 28 U.S.C. § 1738."  *Mardikian v. Citimortgage, Inc*., No. 1:14-CV-00407-LJO, 2014 WL 3615253, at *8 (E.D. Cal. July 21, 2014) (allowing a claim for

---

[2] Defendant Peetz also references Nebraska Revised Statute 30-3850(a)(3), which governs the process of recovering trust assets.  (Motion, at 9).  The Court agrees with Plaintiff that the reference to Section 30-3850(a)(3) is only made in "passing," and Defendant has failed to explain why Section 30-3850(a)(3) applies to this case.  (Opp'n, at 20).  The Court therefore declined to analyze it here.

enforcement of a San Mateo Superior Court judgment to proceed).  "Under the full faith and credit doctrine, not only is such a claim cognizable, but also 'a federal court must enforce a state court judgment when an action is brought for that purpose.'"  *Id.* at *9 (citing Wright, Miller & Cooper, Federal Practice and Procedure, § 4469 at 668 (1981)).  With respect to enforcement of a probate matter, "[f]ederal courts have jurisdiction to entertain suits to determine the 'rights of creditors, legatees, heirs, and other claimants against a decedent's estate,' 'so long as the federal court does not interfere with the probate proceedings.'"  *Goncalves By & Through Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1251 (9th Cir. 2017).

The Court turns to the application of Nebraska Revised Statute 30-2726(b), which Defendant argues forecloses Plaintiff's claim.  Section 30-2726(b) provides that:

> (b) A surviving party or beneficiary who receives payment from an account after death of a party is liable to account to the personal representative of the decedent for a proportionate share of the amount received to which the decedent, immediately before death, was beneficially entitled under section 30-2722, to the extent necessary to discharge the amounts described in subsection (a) of this section remaining unpaid after application of the decedent's estate. A proceeding to assert the liability for claims against the estate and statutory allowances may not be

1  commenced unless the personal representative has re-

2  ceived a written demand by the surviving spouse, a credi-

3  tor, a child, or a person acting for a child of the decedent.

4  The proceeding must be commenced within one year after

5  death of the decedent.  Neb. Rev. Stat. Ann. § 30-2726

6  (West).

7       Peetz argues that Plaintiff had until March 26, 2020 to file a written

8  demand that Peetz recover non-probate assets, i.e., the Murrieta Property,

9  on behalf of the Estate.  Peetz asserts that Plaintiff failed to make such a

10  demand before March 26, 2020, and therefore the time to do so has

11  passed.  Peetz also cites to an opinion of the Nebraska Supreme Court,

12  *Lorenz v. Shea*, 292 Neb. 543, 873 N.W.2d 396 (2016), as support for his

13  conclusion that Section 30-2726 forecloses a creditor's ability to assert

14  liability against an estate more than one year after the decedent's death.

15

16       In response, Plaintiff argues that Nebraska probate laws are not

17  controlling with respect to the timeliness of the Action on Judgment claim in

18  this Court.  (Opp'n, at 16).  Rather than apply Section 30-2676(b), Plaintiff

19  requests the Court apply California statutory procedure to determine if the

20  claim is timely.  Under California Civil Procedure Section § 337.5, "[a]n

21  action upon a judgment or decree of any court of the United States or of any

22  state within the United States" must be made within ten years.  Cal. Civ.

23  Proc. Code § 337.5 (West).  Plaintiff argues that its claim to enforce the

24  Judgment is timely under Section 337.5 because this action was brought

25  within ten years of Judgment being entered.

26

1    Plaintiff also argues that Section 30-2726(b) only governs written

2    demands for non-probate transfers of *accounts* at financial institutions.

3    (Opp'n, at 19).  Plaintiff argues that Section 30-2726(b) does not apply to

4    this case because the non-probate asset in question is real property, not a

5    financial account.  *Id.* at 19-20.  Plaintiff also points out, as a factual matter,

6    that it did not negligently "fail" to make a written demand on Peetz to recover

7    the Murrieta Property within one year of Joseph Augustine's death.  Rather,

8    Plaintiff sent a letter to Peetz on January 30, 2020, demanding that the

9    entire sum of the Note be repaid from the Estate.  *Id.* at 7.  Peetz did not

10   respond until March 26, 2020—exactly one year after decedent's death and

11   the last day for Plaintiff to file a demand for non-probate assets under

12   Section 30-2726(b).  *Id.*  On March 26, 2020, Peetz for the first time

13   disclosed to Plaintiff that the Estate was insolvent and that all of Joseph

14   Augustine's assets had been transferred to Sandra Augustine via the

15   Amended Trust.  *Id.* at 7-8.  Plaintiff surmises that Peetz prevented it from

16   making a written demand for the Murrieta Property because of Peetz's

17   gamesmanship and late disclosures, which Plaintiff alleges was part of a

18   "set-up" to prevent Plaintiff from recovering the property.  *Id.* at 8.

19

20   The Court does not find it necessary to resolve the dispute

21   surrounding the Nebraska statutes at this stage.[3]  The Court instead agrees

22   with Plaintiff that California Code of Civil Procedure Section 337.5 governs

23

24   [3] In its January 14, 2022 Order, the Nebraska Court also declined to rule on
     the applicability of Nebraska Revised Statutes 30-3850(a)(3) and 30-
25   2726(b).  (Dkt. 37-1, Exhibit 16, at 3).  The court explained that those stat-
     utes were not relevant at the time because the court was not determining
26   which assets were or were not available to satisfy the claim.  *Id.*

the timeliness of Plaintiff's Action on Judgment claim.[4]  There is a long line of cases "authorizing the forum to apply its own statute of limitations if it so desires."  *Strickland v. Watt*, 453 F.2d 393, 393 (9th Cir. 1972) (citing *Wells v. Simonds Abrasive Co.*, 345 U.S. 514, 73 S.Ct. 856, 97 L.Ed. 1211 (1954) and others).  "Since the procedural rules of its courts are surely matters on which a State is competent to legislate, it follows that a State may apply its own procedural rules to actions litigated in its courts."  *Sun Oil Co. v. Wortman*, 486 U.S. 717, 722, 108 S. Ct. 2117, 2122, 100 L. Ed. 2d 743 (1988).  Plaintiff is entitled to bring an Action on Judgment claim to enforce the January 14, 2022 Judgment against the Estate because the claim was initiated within the ten years allowed by California law.  *See Irby v. Haden*, No. C 08-80004 MISC PJH, 2008 WL 2561958, at *3 (N.D. Cal. June 25, 2008) (applying Section 337.5 to determine whether a judgment from the Southern District of Texas should be enforced).  Notably, Defendant does not advance any argument as to why the California statute of limitations should not apply.

In Reply, Defendant Peetz reasserts many of the arguments he made throughout the Motion – that Peetz and the Estate can not satisfy the Judgment or provide the relief sought because the Estate does not own the Murrieta property.  But that argument falls flat here.  Unlike for the quiet title

---

[4] It remains an open question whether Section 30-2726(b) forecloses Plaintiff's ability to demand that the Estate recover the Murrieta Property.  The Court will engage in a choice of law analysis to determine this question when it arises.  Nonetheless, that question is not dispositive here because Plaintiff also requests other forms of relief for the Action on Judgment claim, including amending the Judgment to add additional debtors.  Section 30-2726(b) does not affect the claim with respect to these other forms of relief.

and cancellation of instruments claims, Peetz is clearly a proper party to the Action on Judgment claim because the Judgment was entered against the Estate. Plaintiff requests that various actions be taken to satisfy the Judgment, including: enforcement and execution of the Judgment against the Murrieta Property, amendment of the Judgment to add Defendants as judgment debtors; judgment against Defendants in the amount of $601,497.40, with per diem interest; and attorneys' fees and costs. (SAC, ¶¶ 32-22). Peetz is a necessary party to all of these claims as the Personal Representative of the Estate.

The Court therefore **DENIES** the Motion as to the Action on Judgment claim.

### D. Declaratory Relief

Plaintiff also brings a claim for Declaratory Relief against all Defendants. Plaintiff requests a declaration of the Court that the Reconveyance is a nullity and that Plaintiff may enforce the 2014 Deed of Trust against Defendants. (SAC, ¶ 35). Alternatively, Plaintiff requests declarations that the 2015 Grant Deed, 2017 Grant Deed, 2019 Grant Deed, September 2019 Grant Deed, and 2020 Grant Deed are a nullity, void and subject to cancellation and that the 2011 Grant Deed be declared binding on the parties. *Id.* at 36. In the alternative, Plaintiff requests a declaration quieting title in AGS in the Murrieta Property, or a declaration that AGS is entitled to the imposition of an equitable lien against the Murrieta Property for the value of the Note, plus attorneys' fees and costs. *Id.* at 37-38.

United States District Court
Central District of California

"The Declaratory Judgment Act gives the Court the authority to declare the rights and legal relations of interested parties, but not a duty to do so." *Stickrath v. Globalstar, Inc.*, No. 07–1941, 2008 WL 2050990, at *3 (N.D. Cal. May 13, 2008) (citing *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 533 (9th Cir. 2008)). A "claim for declaratory relief is not a stand-alone claim, but rather depends upon whether or not Plaintiff states some other substantive basis for liability." *Nguyen v. JP Morgan Chase Bank*, No. SACV 11-1908 DOC (ANx), 2012 WL 294936, at *4 (C.D. Cal. Feb. 1, 2012); *see Hernandez v. Select Portfolio, Inc.*, No. CV 15-01896 MMM (AJWx), 2015 WL 3914741, at *14 (C.D. Cal. June 25, 2015) (granting motion to dismiss declaratory relief claim "[b]ecause [Plaintiff] has failed to state any substantive claims"); *Javaheri v. JPMorgan Chase Bank, N.A.*, No. 2:10-CV-08185-ODW (FFMx), 2012 WL 6140962, at *8 (C.D. Cal. Dec. 11, 2012) ("Declaratory and injunctive relief do not lie where all other claims have been dismissed.").

Plaintiff's declaratory relief claims appear to be based on its claims for quiet title and cancellation of instruments. Because the Court dismisses those claims against Defendant Peetz, which are based on the same factual and legal theories, the declaratory relief claim must also be dismissed.

## IV.    CONCLUSION

The Court therefore **GRANTS** the Motion to Dismiss **IN PART.** The Court dismisses Plaintiff's claims for quiet title, cancellation of instruments, and declaratory relief against Defendant Peetz **WITH LEAVE TO AMEND**. The Court **DENIES** the Motion as to the Action on Judgment claim.

.

Dated:    8/18/22

Virginia A. Phillips
United States District Judge